Opinion of
the Court.
ON the first of January 1818, Trigg and Northcut executed to each other their mutual covenant, whereby Trigg on his part covenanted to place with Northcut a yellow boy named Nelson, and continue him with him for three years, as an apprentice: and Northcut on his part, among other things, covenanted to teach the boy, Nelson, the art of house-plastering.
On the covenant on the part of Trigg, Northcut commenced an action, on the 19th day of May 1820, and alleged for a breach of the covenant, that on the—day of —, in the year —, Trigg took the boy, Nelson, out of Northcut’s possession, and did him keep, and refused to surrender or return him, for the space of two years.
Trigg pleaded non infregit conventionem, on which issue was joined.
On the trial, Northcut proved the boy, Nelson, was seen in Trigg’s possession a little before Christmas 1819, and that he has kept the possession of the boy ever since, and refused to give him up, stating that he should not stay with Northcut any longer. Northcut also proved that a good plasterer was worth $20 a month, and that the boy was worth half as much as a good plasterer; but the same witness, who was himself a plasterer, stated, on cross-examination, that he would not give $7 a month for said boy, nor for any other who understood the business no better, and that, during the winter months, March and a part of April, he would be willing to let any man have his apprentices for feeding, clothing and lodging them; and that plasterers could do nothing at their trade during those months, and did not generally begin business before the 20th of April.
This being the whole evidence, Trigg moved the court to instruct the jury, that Northcut was only entititled to recover damages from about Christmas up to the 19th of May 1820, when the suit was commenced, and not by the evidence of the time during which the boy was bound to serve Northcut. The court instructed the jury, that for the loss of service they could not go *415 beyond the 19th of May 1820; but, as to taking away said boy from Northcut’s service, and his inconvenience occasioned thereby, they were not limited to the 19th of May 1820.
To the latter part of the instruction Trigg excepted, and the jury having found a verdict for Northcut, for $105 in damages, Trigg moved the court for a new trial, on the grounds, 1st, that the court misdirected the jury; and 2dly, the damages given by the jury were enormously high. But the court overruled the motion, and Trigg again excepted; and the court having entered a judgment upon the verdict, he has brought the case to this court by a writ of error.
Various points are made by the assignment of error. Such of them as are thought material, we will notice in the order in which they appear in the record.
The first point we shall notice, is, that the action could not be brought before the whole term of the boy’s service had expired. This point is obviously untenable. Trigg having covenanted that the boy should continue with Northcut for three years, the taking of the boy from the possession of Northcut, was clearly a breach of the covenant, and gave to Northcut an immediate right to sue. See Bruce vs. Mathers, 2 Bibb 294.
The second point which we shall notice, is, that the breach in the declaration is insufficient, because it alleges not only the taking of the boy from the possession of Northcut, but the detention of him from his possession and service. The taking of the boy from the possession of Northcut, being alone a good cause of action, it is plain that the superaddition of other matter could not vitiate the declaration, or render the breach insufficient. As, however, the verdict is general, it must be presumed to have been given for the damages for the detention, as well as for the taking of the boy from the service of Northcut, both being alleged in the declaration; and if no damages could, in this action, be recovered for the loss of the services of the boy, the verdict and judgment would be manifestly erroneous. But we cannot admit that Northcut had not a right to recover, as well for the detention as for the taking of the boy from his service; for the detention is as plainly a violation of the letter and spirit of the covenant, as the taking is; and it would be preposterous, to suppose that *416 for such a violation of the covenant no action could be maintained. It is true, that Northcut could not, in this case, recover for the loss of the services of the boy, occasioned by his detention after the commencement of the action; but the declaration does not allege a detention after the commencement of the action. It, indeed, alleges a detention of the boy for two years, without averring when the two years commenced; but as more than two years had elapsed, from the date of the covenant, before the commencement of the suit, we are bound, after verdict, to presume the detention complained of to have been within that period. But as Northcut cannot recover for the loss of services after the commencement of the action, it is attempted to be inferred from thence, that he could not maintain an action for the loss of the boy’s services, until the whole period of his apprenticeship had expired. This inference is certainly unsupported by any authority, and is, we conceive, directly opposed to the principle upon which the doctrine from which it is attempted to be derived, is founded. There is one class of cases in which it is clearly settled, that damages accruing subsequently to the commencement of the suit, may be recovered; and there is another class of cases in which it is equally well settled, that such subsequent damages cannot be recovered. The true distinction between those two classes of cases, seems to be, that where the subsequent damages are the mere incident or accessary of the principal thing demanded, and no action can be maintained for them, they may be recovered; as in an action of assumpsit for principal and interest, upon a contract obliging the defendant to pay such principal money with interest, the interest which accrues, as well after as before suit, maybe recovered. Robertson vs. Bland, 2 Burrows, 1086. But where the damages accruing subsequent to the commencement of an action, are not an incident or accessary to what is demanded in such action, but have been produced by a new injury, for which another action will lie, they cannot be recovered in the action brought before they accrued; as in an action for a nuisance which has been continued after the commencement of the action, the damages occasioned by such continuance of the nuisance, cannot be recovered. So, in an action for false imprisonment, damages cannot be recovered for the continuance of the im *417 prisonment after the action was brought. 1 Ld. Ray. 329. The inference, therefore, to be deduced from the doctrine, that Northcut cannot, in this action, recover for the loss of service of the apprentice, which happened after the commencement of the action, is not that no action for the loss of service of the apprentice, which happened after the commencement of the action, will lie, until the whole period of his apprenticeship shall have expired; but that, for every loss of service, (being a breach of the covenant on the part of Trigg,) Northcut may have a separate action. There is, consequently, no objection to his recovery in this action for the loss of the services of the apprentice, as well as for the taking him from his possession.
The next point we shall consider, is, whether the court erred in that part of the instructions given to the jury, to which Trigg excepted. These instructions evidently imply that the jury might go beyond the commencement of the suit, in giving damages for the taking of the boy, by Trigg, from the service of Northcut. If there were any such damages, which had resulted to Northcut, they could be considered only as the incident of the wrong which had been done before the commencement of the suit; and, according to the principles before suggested in this opinion, might be recovered in this action; but there certainly was no evidence conducing to show that any such damages had resulted. The instructions, therefore, as they authorised the jury to find damages for the taking of the boy, after the commencement of the suit, where there was no evidence conducing to show that any such damages had resulted to Northcut, were erroneous.
Judgment reversed.